BARTON PARKER MFG. CO. *v.* J. K. BRUMFIELD & CO.

[73 South. 867, Division B.]

1. SALE. *False representations. Countermanding order.*
   Where a salesman induced a merchant to order goods by falsely representing that certain other merchants were handling the goods and that they were entirely satisfactory to them, on finding out that such representations were false, the merchant had a right to countermand the order.

2. NOTE. *Payable to bearer. Innocent purchaser.*
   In a suit on a note payable to bearer for the purchase of goods where it is shown that the holder of the note was in fact the payee masquerading under another name or at most was a mere agent of the seller of the goods, such holder is in no sense an innocent purchaser for value without notice.

APPEAL from the circuit court of pike county.
HON. J. B. HOLDEN, Judge.

Suit by the Barton Parker Manufacturing Company against J. K. Brumfield & Co. From a judgment for defendant, plaintiff appeals.

A traveling salesman of the Barton-Parker Manufacturing Company of Cedar Rapids, Iowa, sold to appellee certain jewelry, and took the note of appellee to cover the purchase price. The salesman wired the order in to the

house, who acknowledged receipt of the order and wrote that shipment would be made in a few days. Appellee, having learned that certain representations made by the salesman were untrue, wired a cancellation of the order and confirmed the wire by a letter. When the goods arrived, appellee refused to receive them. The note executed by appellee was transferred to the Barton-Parker Manufacturing Company of Memphis, Tenn., who filed this suit, claiming to be innocent purchasers for value, without notice.

*R. W. Cutrer,* for appellant.

At the outset, I desire to call the court's attention to this note executed by Brumfield & Company which will be found on page 3 of the record; this note is dated Cedar Rapids, Iowa, March 9, 1911, and is made payable to Barton-Parker Manufacturing Company, or bearer. This note was afterwards sold to the Barton-Parker Manufacturing Company of Memphis, Tennessee, a separate and distinct corporation from the Barton-Parker Manufacturing Company of Cedar Rapids, Iowa, as will be seen by reference to the testimony of Mr. Roberts and being a note made payable to bearer does not fall within our anticommercial statute and Brumfield & Company cannot set up any defense they may have to same against the holder, the appellant here. If we are mistaken in this, then, we say, from a careful reading of the testimony in this cause, we believe the court will be bound to reverse the case because the facts in evidence are insufficient to support the contention of appellee. Brumfield, himself, testifies in answer to questions propounded to him by counsel for appellant, if he had taken the goods out of the depot, he answered, "No, sir." When asked if he examined them, he said "No, it wouldn't have done any good to have examined them," When asked if he knew what quantity and quality of goods they were, he replied that he did not; when asked if he knew whether

or not the goods were as represented to him by the agent, he said he couldn't say because he did not take them out, and soforth.

We think it was error for the court to permit the testimony of Mr. Brumfield and Mr. Simmons because as we stated above, this is a note made payable to bearer and was held by an innocent party.

It was error for the court to sustain the objection to the testimony of Mr. Magee and Mr. Goza, as will be seen by reference to pages 74 and 75 of the record, after letting the witness Simmons testify as to the quality of the goods.

As stated above, we think the court should have given, as asked a peremptory instruction for the plaintiff.

*V. M. Roby,* for appellee.

The nature of the fraudulent misrepresentations alleged to have been made by salesman Roberts in selling this jewelry to appellee is so remarkably like that characterizing a case previously decided by this court as to be almost identical. In the case at bar it was alleged and proven to the satisfaction of the jury, it seems, that the execution of the note sued on was procured by the false and fraudulent representation that certain merchants in Tylertown and elsewhere in whose judgment, business ability, and experience appellee had great confidence; had purchased the same kind of goods from appellant's parent concern; that said goods were satisfactory to them and that one of said merchants had an engagement for the day with salesman Roberts in order to purchase more of the same goods of like kind; when, a : alleged, as a matter of fact, Roberts well knew that such goods would not, under any circumstances, be repurchased by him because they were practically worthless and unsatisfactory to him. The admission of this evidence in the testimony of witnesses C. I. Brumfield and A. W. Simmons has been assigned as error by counsel for

appellant, but the ruling of the court below in this matter is not only consonant with sound reason but is directly in point with the case of *Hirschburg Optical Company* v. *S. A. Jackson & Co.* reported in 63 Miss. 21, and the main facts as proven in this case now before us are singularly identical with those in the former case just cited, the opinion there handed down being as follows:

"If an agent in offering goods for sale falsely represents to the buyer, who is ignorant of the quality of the goods so offered, that A.B., in whose judgment as to such goods the buyer has confidence, had given him an order for this class of goods and was a regular customer of the agent's principal, and thereby the buyer is induced to enter into a contract for the purchase of such goods as he cannot honestly offer to his customers, such representation is fraudulent and vitiates the contract."

The supreme court, therefore, having laid down the rule that the misrepresentations attributed to salesman Roberts on this occasion to induce the appellee to buy this jewelry were material fraudulent misrepresentations which vitiates the entire contract, there being no error in admitting the testimony of witnesses Brumfield and Simmons to prove the same; neither, for the same reason, was there error in refusing the peremptory instructions asked for by appellant.

The undisputed testimony in this case shows that not only did appellee refuse to receive the shipment of jewelry from the carrier, but that as soon as he learned of the fraudulent representations he had promptly taken steps to prevent its shipment by his vendor. And not only so, but it appears from the evidence that while the vendors in acknowledging receipt of the order given their salesman by their letter dated March 10, 1911, stated they would make shipment within a day or two, it was not until after receipt of the telegraphic countermand from appellee that they proceeded to get very busy to make the shipment directly in the face of this countermand which was sent them on March 17th.

Their reply to the cancellation of the order, dated the following day (March 18th) was wired to appellee and read as follows: "Message received too late; order shipped yesterday." This statement as to the time when the goods were shipped is absolutely contradicted by the date of the waybill covering the shipment from Cedar Rapids which was offered in evidence by appellee as an exhibit to the testimony of witness Brumfield, a copy of which appears on page 24. This waybill is dated March 18th, evidencing the fact that the shipment was made on that date, and not on the 17th as stated in their telegram and letter to appellee. On pages 25, 26 and 31, as evidence offered by the appellants themselves, will be found directions given by them to sundry concerns to ship the premiums or gratis goods which went with the jewelry order, and the dates on these all tend to show that the telegram of appellee countermanding the order—which by reason of the fraud practiced by the salesman Roberts, appellee had a right to do precipitated a hurried attempt on the part of the Barton-Parker Mfg. Company to ship the order in order to make the same "stick," if possible, regardless of the countermand.

In conclusion we respectfully submit that the ruling of the trial court upon the material points in this case is directly in line with the case hereinbefore cited, the circumstances concerning which are almost identical with those concerning the case at bar; that the jury was justified from the evidence in returning a verdict for appellee and that such verdict should not be disturbed; and that therefore the judgment for the appellee in the court below should not be affirmed.

COOK, P. J., delivered the opinion of the court.

According to the evidence of the defendant below, appellee here, the salesman of the seller made certain false and fraudulent representations to the buyer of the goods, which induced him to buy the goods. It further appears

that the buyer countermanded the order by letter or telegraph, as soon as he ascertained that the representations were false. This case in its facts, is strikingly like *Hirschburg Optical Co.* v. *Jackson & Co.*, 63 Miss. 21. In the present case, the witness for the defendant stated that, as an inducement to buy, the salesman told him that other merchants had handled his goods, and that they were entirely satisfactory to them. The merchants mentioned denied this statement, averring that the contrary was true, and it was then the defendant canceled the order.

It is claimed that the note executed by the defendant for the agreed price of the goods purchased was payable to bearer, and that plaintiff was an innocent purchaser for value, without notice. We think the record affords a complete answer to this claim. It is shown that the holder of the note was, in fact, the payee masquerading under another name, or, at most, it was a mere agency of the seller of the goods, and was in no sense an innocent purchaser for value without notice.

*Affirmed.*